LEONARD (WILLIAMS v.). See Case No. 17,726.

LEONARD v. The VOLUNTEER. See Cases Nos. 16,990 and 16,991.

## Case No. 8,262.

### The LEONIDAS.

[Olc. 12.] [1]

District Court, S. D. New York. Oct., 1843.

PRACTICE IN ADMIRALTY—SEAMEN'S WAGES—SUIT IN REM—MASTER—MATE—CARRIERS—GOODS NOT DELIVERED—PROPER ACTION — CARGO SOLD BY MASTER—RIGHT TO CONTRIBUTION.

1. Where the mate, upon the decease of the master, succeeds to the command of the vessel, he cannot sue, in rem, for the extra compensation he thus becomes entitled to as acting master.

2. According to the English and American cases, the mate must sue in the admiralty as mate. His claim for services as temporary master, either demanded as additional wages or as a quantum meruit, must be agitated elsewhere. By the well-settled rule in admiralty, the master of a ship is entitled only to an action in personam for the recovery of compensation for his services.

3. The holder of a bill of lading has a remedy in admiralty against the master on his undertaking, or personally against the owners of the vessel, or against the vessel in rem, where the goods shipped on board are not delivered.

[Cited in Robinson v. Memphis & Charleston R. Co., 9 Fed. 139.]

4. If part of the cargo be sold in a foreign port by the master, to supply the necessities of the ship, the owner of it may be entitled, in case the ship or owners cannot satisfy his demand, to proceed against other owners of cargo to contribute, in proportion to their respective interests, towards his indemnity.

5. In an action in rem against a vessel, the court cannot take cognizance of collateral equities to enforce them against parties personally, not made parties to the proceedings, where such decree may be prejudicial to their interests.

In admiralty.

BETTS, District Judge. This is an action instituted by two seamen and the chief mate in rem, to recover wages due them. The demands by the seamen and the mate in that capacity are not contested. But it is made a point of controversy whether the mate, succeeding to the command of the vessel, can sue in rem for the extra compensation he thus becomes entitled to as acting master. It is

1 [Reported by Edward R. Olcott, Esq.]

admitted the English rule does not allow such recovery in admiralty (2 C. Rob. Adm. 232; The Favourite, 2 Strange, 937); but it is contended that a different principle is sanctioned in this country, and the case of The George [Case No. 5,329] is relied upon as establishing that doctrine. This point, however, is not touched in that decision, nor does any principle there decided necessarily embrace it. The mate in that case, after the command of the vessel devolved upon him, went ashore and received medical treatment, which was paid for by him out of the funds of the ship; that disbursement was set up by the owners as a sum to be deducted from his wages. Lamson v. Westcott [Id. 8,035].

But it does not appear, from the statement of this case in the district or circuit courts, that the increased wages due him as master were included in his demand. If they were, no objection was raised to their allowance, the cause proceeding upon the admission of the libellants' account, and only seeking a decision as to the justness of that deduction. The court adjudged, that as mate or mariner he was entitled to be cured at the expense of the ship, and that his casual command of the vessel did not deprive him of any of the incidents or privileges appertaining to him as mariner. Judge Story goes further, and intimates that a master is also entitled to be cured at the expense of the ship the same as a mariner. The last suggestion is advanced only to show that the court, in adjudging in favor of the libellants, could not be understood to decide, that because he had such privilege, he was entitled to enforce it in rem, nothing being now more definitely settled than that a master has no remedy against the ship for his services. I do not therefore perceive, that Lamson v. Westcott, [supra,] has any relation to the point in question. It rests on considerations and principles entirely distinct from that of the method by which the mate is to collect the compensation he becomes entitled to as acting master. I find no American case that conflicts with the decisions of the English courts. Judge Peters expressly affirms those cases. He says, the mate "must sue in the admiralty as mate, and his wages, as such only, are recoverable here. His claim for services as temporary master, either demanded as additional wages or as a quantum meruit, must be agitated elsewhere." Atkyns v. Burrows [Case No. 618].

It is difficult to discover any satisfactory principle for limiting the relief of a master in the admiralty to an action in personam, his services being pre-eminently in the vessel and for her benefit; and his contract is technically with the owners, but ordinarily without any personal knowledge of them or their responsibility—perhaps scarcely less frequently than the engagements of the seamen. The reason suggested in the books—"The presumption is that the mariners who contract with the master, contract with him on

the credit of the ship; whereas the master, who contracts with the owners, is presumed to trust to their personal credit"—is by no means universally true as matter of fact, as the employment of a master is as often by a ship's husband, agent or consignee, as by the real owner. They frequently are numerous and widely dispersed, and the ship's papers do not necessarily disclose the names of the actual owners. Whatever may be thought of the principle of the rule, it is not my province to disturb a well-settled doctrine of law, and I do not discover any ground of discrimination upon which a compensation as master can be recovered by a mate in a method different from that established in behalf of the master, taking his authority in any other manner than by casual succession. If his action against the owners in personam is carried to a decree, the court may equitably retain any surplus or remnants out of the proceeds of the vessel in court for its satisfaction, but in this case no such surplus will remain. So much of the libellant's demand as relates to an extra compensation in his character of master must accordingly be disallowed, and the clerk will report the amount due him for wages, as mate, and also the amount due the other parties suing with him, as co-libellants.

At a subsequent day, upon the coming in of the clerk's report in this cause, Mr. Benedict moved for its confirmation. Mr. Cutting opposed the motion, and asked that $62.75 be deducted from the amount reported due the master.

BETTS, District Judge. The libellants, Hill, and Owen, had a remedy in admiralty on their bill of lading against the master on his undertaking, or personally against the owners of the schooner, or against the schooner in rem, because of the non-delivery of the goods shipped on board. Poland v. The Spartan [Case No. 11,246]; 3 Kent, Comm. 207; Smith, Merc. Law, 175; Abb. Adm. 92, 94, 170. The ship is bound to the merchandise and the merchandise to the ship. Cleirac, 72; Malpica v. McKown, 1 La. 259; Aray v. Currel, Id. 539. And because part of the cargo, their property, was sold in a foreign port by the master to supply the necessities of the ship, the libellants might probably be entitled, in case the ship or owners could not satisfy their demand, to compel the other owners of cargo to contribute in proportion to their respective interests towards his indemnity. The Packet [Case No. 10,654]; The Gratitudine, 3 C. Rob. Adm. 240; The Hoffnung, 6 C. Rob. Adm. 383; American Ins. Co. v. Coster, 3 Paige, 323. They brought their action against the vessel alone, and obtained a decree for full compensation out of her proceeds in the registry. But the ship's crew have since interposed their demand for wages, and that right taking precedence of the shipper's claim, and the proceeds in court being insufficient to satisfy both, it is now urged that the mate shall be compelled to apply towards his wages the $62.75, being the surplus of cargo sold and remaining in his hands, or bring that money into court, to be distributed according to the rights of these libellants.

An action properly framed, might possibly have commanded a decree conformably to the latter branch of the application. The money in the hands of the mate, as acting master, being part of the proceeds of the libellant's goods, belongs to them; and as against them, in a suit founded on that fact, he could not retain it, to be applied in his accounting with the owners of the vessel. In an action in rem against the vessel, this court cannot take cognizance of collateral equities, to be enforced against third persons not parties to the suit, and the shape of the case before the court would accordingly prevent the rendition of a decree against the mate, compelling him to perform an act to his own prejudice and the advantage of the libellants. This is not mere matter of form. Marthan, the mate, became, by the decease of the master before in command, actual master of the vessel for the completion of the voyage. For this extra service he demands a compensation beyond his wages as mate; and the judgment rendered in this case by the court admits the validity of such demand as against the owners, only denying him a remedy in rem therefor. The decree accordingly gives him his wages, as mate alone, out of the proceeds of the vessel, and his remedy for his services as master is against the owners personally. In the adjustment of that demand he would be entitled to retain, as against them, any moneys in his hands belonging to them, and the products of the sale of the cargo for the benefit of the vessel, as between them and the mate, is their fund. It is therefore clear, that if, in this mode of proceeding, whether Hill and Owen (the libellants) obtain satisfaction or not of their demand from the proceeds in court, they can have no legal authority to force the mate to an accounting with them in respect to those moneys, and that he would have a lien on them for the satisfaction of his wages as master. Nor can the court order an application of that money towards the satisfaction of the wages decreed him as mate, and accordingly he must take his compensation out of the moneys in court to the amount settled by the report, and it must be left to an amicable adjustment, or to an action, bringing the proper parties before the court, to secure the libellants, Hill and Owen, the benefit of that fund belonging to them.

The motion to confirm the report will, therefore, be granted. The deduction of $62.75, asked for, is denied, but without costs on that motion.